Good morning, Your Honors. I'm Jesse Kaplan on behalf of Tatyana Plummer, the appellant. I'd like to reserve, I guess, three minutes of time for rebuttal. I am not completely sure why I'm here in terms of what it is that may be interesting this Court. Let me begin by saying something that I can say that the rest of the people involved in this case maybe can't, which is just to report from the trenches that what happened in terms of race judicata here is pretty unusual. In cases which are Title II cases that have what we call a date-last-insured problem where the claimant has to prove disability by a certain date, you might see race judicata, or anyway, you will see race judicata applied more often. Of course, you may be getting into a question of straight reopening, but this is not how it's usually done to invoke race judicata so aggressively, and it's not how you want it to be done. And, of course, we're talking about a kind of unusual and unique form of race judicata here, but anyway, the reason you don't want it to be done is because people's medical conditions change and you don't want to foreclose them being able to come back and be found disabled again later. Can we just assume for a minute, for purposes of discussion, that the ALJ erred in applying race judicata here? Why isn't it just harmless? Why isn't it just harmless? I mean, what? You know, you can either way just assume for a minute. Perhaps your question is getting at... The ALJ went on to address all the new evidence that was submitted. Right, that was what I was going to say. Perhaps what you're trying to ask is the basic question that I asked in my briefing and how the court below handled it, that, you know, some explanation was given for why race judicata was applied and, therefore, that gets to cover the usual analysis and so it should be upheld. Well, the ALJ said, nonetheless, I'm going to take a look at all the evidence. And he does. He takes a look at all the evidence. He discredits Dr. Fizer. He discredits Dr. Fenton. Right, I mean... And then he concludes that she should be discredited and he finds her father's testimony to be non-germane or only credible up to the extent it supports a finding of light work. There's a long answer and progressively shorter answers to your question. You don't have all day, so... Right. I'm painfully aware of that. Well, something close to the shortest answer is that we are here, in this case, perpetuating a residual functional capacity that was first found in 2008 by a consultative examiner who did not see any of the medical imaging evidence. And besides, that's a long time ago. That was in the previous claim. I'm just looking to count how many MRIs of my clients. Well, let me get, let me, just, maybe I have to be just dead specific. Why, where, why did the agency err in discrediting Dr. Fenton or Dr. Fizer? Just tell me what was, why, where did the ALJ err? Well, I think, you know, the reason given for pretty much everything this decision does is always the same. And I wonder that, well, if we're going to talk about what I always call the use of mundane daily activities against a claimant, that's one of the reasons. I'm asking you to give me your best argument why the ALJ erred in not giving full weight to the treating physician, Dr. Fizer and Dr. Fenton. Well, then, I mean, the quickest answer I can give is the answer that I gave that I think suggests something a little bit novel. Because if there's an error in having relied on res judicata, then the, there are no other physician opinions that aren't infected by res judicata, if you're following me. The ALJ has like a 13-page opinion. And as I would read it, you know, 11 or 12 of the pages are a very conventional, straightforward treatment of symptoms and disabilities. Res judicata is a page or so at best. So if you just examine what he says as he goes through the steps, he does say that it's not just the consultative examines, it's Dr. Amin and Dr. Nakamura. And he seems to do exactly what we want an ALJ to do. So he may have misspoken on the res judicata. But aren't I right that the vast majority of the opinion is conventional Social Security analysis? Yes. It's conventional Social Security analysis. And I would say it's flawed at every turn. Well, isn't that the question? I've been trying to ask you to explain to me why it's flawed. Well, it's flawed because it rejects Dr. Pfizer, it rejects Dr. Fenton, it rejects my client, and it rejects her father. I went through that right at the very beginning and I asked you to explain to me why. Don't just say it rejects it. It rejects it incorrectly because. Well, it rejects it incorrectly because it relies on mundane daily activities. It mischaracterizes the evidence. One of the interesting issues here that this case is a little bit dramatic about is that it rejects her especially, but probably it could be said all these other things are rejected because of her refusal of treatment in the face of, you know, a pretty horrible situation where she probably almost had to have surgery. And that's what the doctors say. That's what Dr. Fenton says. I'm sorry, Dr. Fenton? Yes. I think, I mean, we passed over something that's interesting, which is if resting a case on race judicata is clearly wrong under the case law and there is no express alternative finding that, well, in any case, here's, you know, why she loses, should the case be reversed. Here, though, that alternative explanation is bad, and we've just gone over that. Why don't you save the balance of your time for rebuttal? Okay. Good morning, Your Honors. Tina Neiker. May it please the Court. My name is Tina Neiker for Acting Commissioner of Social Security, Nancy A. Berryhill. I'd like to address Clayman's argument regarding the race judicata issue. And here I think the Court is right in stating that the ALJ, even though the ALJ applied the presumption of non-disability, the ALJ still conducted a five-step sequential analysis here and still defined non-disability. So there is, even if there was a problem with applying Chavez in this instance, the ALJ subsequently cured it by conducting a full analysis, including the later evidence, which Clayman argues was the imaging evidence that showed a worsening condition. Could we just put aside race judicata for a moment? Sure. So let me ask you, like, Dr. Fizer, you, ALJ makes a big deal. Well, Dr. Fizer, you know, all he did was provide responses to a form with a lot of boxes. Just check the boxes. Right? Correct. And he didn't, you know, he didn't really have any sort of detailed analysis or anything. And he says, well, you know, we can't really put much weight on that. But let me ask you, isn't this form provided by the agency? I don't believe so, Your Honor. I think it's provided by the agency. It says Social Security Administration Office of Disability Adjudication and Review. Correct. Let me just pull that form up, if that's okay, Your Honor. But there's another problem with Dr. Fizer's opinion. Hold on, counsel. Before you, let's not run away from Judge Pius's question. So I think the excerpt from the record, I think it's 347. Do I have that right? Yeah, 347. There's a number, 157. But it's 347, I believe it is. It says, form approved, Office of Management and Budget Number 0950-0562. It looks like it is a form provided by the Social Security Office of Disability Review. But there is another problem with Dr. Fizer's opinion. It was dated on March 17, 2010, which is about three months prior to the alleged onset date in this case. That's pretty close. I know that opinions prior to the alleged onset date aren't probative for purposes of disability review following this opinion. To the extent Dr. Fizer's ---- I'm sorry. I'm sorry, I didn't quite catch that. I'm sorry. Is that because of race judicata? I'm sorry? Is that because of race judicata? It's because it dealt with a previously adjudicated period. And the onset date in this case is August 26, 2010. If you don't apply race judicata, though, don't you look at the entire record? We look at it after the onset date. And any records prior to the onset date are of limited relevance. Are of limited relevance. Okay. I'm not sure that I read the ALJ's opinion in that way. But I thought he was very much concerned with the format of his opinion. The format of the opinion is also deficient because it does not provide explanation. And I think the ALJ did a good job here in explaining why. So the ALJ pointed out other normal examinations. For example, Dr. Amin observed six months after Dr. Fizer filled out this report, which would be within the onset date of claimant's alleged disability. Dr. Amin observed normal physical examination, no muscular tenderness, and full range of motion in all extremities. And that's on page 429 of the record. The ALJ also mentioned, Dr., other normal findings. Now, those are agency. Were those agency doctors? No, these are physicians that claimants saw. Okay. And then Dr. Nakamura, for example, saw a claimant after the onset date. And she, Dr. Nakamura also assessed that she had full range of motion, five out of five strength, normal gait, a negative straight leg raise test. And that's on page 448 and 449 of the record. Then we get to Dr. Fenton. Let me ask, but let me go back to, I just want to, because I see this in a lot of social security cases, and I've always been kind of curious about this, but here it seemed to stand out to me is that the agency provides this form, the doctors fill it out, and then they say, ah, well, we're not going to give him any weight. We're not going to give it much weight because it's just check the box, and he didn't really supply the answers or explanation. That seems kind of, that strikes me as a bit odd. Well, the form itself may have been provided, but there still needs to be support for the doctor's position. And I don't think there is any support for the doctor's position as the ALJ. None of his records, his own records. Correct. Okay. If we go to Dr. Fenton for just a moment. So the ALJ discredits him and says that, what did he, he said that, was he the one who said she could lift, only lift, she should not lift more than 5 pounds? Something like that. Correct. And that's on page 631 of the record. His term was a little, she sees lifting, pushing, pulling over 5 pounds, right? Yes. And he said that's inconsistent. Correct. So that was on page 631 of the record. If you look at Dr. Fenton's later examinations, and including, I want to point out some other doctors that examined Clayman, even though that she recommended that she not lift, push, pull over 5 pounds, first of all, that's not really a medical opinion. That's only in the treatment record. So it doesn't list any functional limitations other than that limitation. So it's under the regulations, medical opinions are statements from physicians that reflect judgments about the nature. But isn't he trying to assess her, you know, her ability to do things? Is he evaluating her? In a one-line sentence, he puts that in there. But there's really no support for it, which is what the ALJ noted. If you look at Dr. Fenton's later examination, she, I'm sorry, the examination on that date, Clayman had normal gait, she had a normal sensor exam, intact sensation, 5 out of 5 motor exams, negative testing, and negative compression and only spinal tenderness. So these indicate that he might have been. So you're saying that if all of that is correct, then limitation to 5 pounds would be inconsistent? Correct, Your Honor. And I wanted to also point out Dr. Diana Donceva, who Clayman saw after Dr. Fenton's recommendation here. And in 2014, Dr. Donceva found that there was no issues upon physical examination. Her shoulder and neck x-rays were also normal. And Dr. Donceva also observed normal range of motion, even though no tenderness and normal strength. And that's on page 757 of the record. So I think there's multiple instances of here of where even considering Clayman's argument regarding that the ALJ did not apply the presumption of an autism disability correctly, there's multiple instances of the record that still preclude disability based on these very normal examination findings. And as Clayman mentioned, the activities of daily living, which he described as mundane, but they actually are fairly active. She was able to ride a bike, swim, go to church. And these aren't mundane activities. And in conjunction with her normal office. Well, they said a person doesn't have to be completely incapacitated in order to receive benefits. Correct. But the record as a whole demonstrates non-disability. So it's those activities in line with the normal examinations that result in non-disability here. All right. Thank you, Your Honor. Okay. Thank you. There's always the what was ringing in your ear problem. I strongly suspect, but I can't be precise so I don't want to spend too much of my limited time on it, that some of the normal exam finding stuff that was just being told to you is part of the problem that I identified in my brief, that you're probably dealing with electronic charts that are giving normal findings because that's not the point of the exam. Regarding Dr. Fizer's assessment, apparently that assessment mistakenly or for some reason did not get into the prior claim. And I don't think any good reason was identified by Ms. Nacre why you cannot look at Dr. Fizer's assessment in this claim just because it comes four months before her alleged onset date. Presumably it applies going forward, and I don't think there's any doubt about that. Going more to the heart of the matter, and I do say this in my brief, you're not going to see an administrative law judge decision that does try to invoke res judicata that's just going to say, you know, same issue, same claimant, same whatever, gone. It's always going to go on for a number of pages, and the decision writers only know how to write one form of decision. So it's always going to look, it's always going to take the form of a decision that could serve the double duty of denying the claim, and we've already been over why I think every twist and turn of that just doesn't work. I think the bigger question is, you know, just what to do. If there's anything interesting about this case, and my problem obviously was what is that, it's either what good does res judicata do, or, you know, can you use her declining treatment in a really serious situation against her. I guess I'm out of time, though. Yes. Thank you. And the matter is submitted at this time.
judges: Boggs, Paez, Owens